[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14665
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-20365-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NANNETTE M. COBB,
a.k.a. Nannette Cobb Ortiz,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 9, 2014)

Before TJOFLAT, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Nannette Cobb appeals her 45-month sentence, imposed after pleading guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343.  On appeal, Cobb argues that the district court erred when it relied on uncontested statements in the Presentence Investigation Report (PSI) to determine the losses from her embezzlement scheme for the offense characteristic enhancement.  Cobb also argues that the court erred when it considered losses from embezzlement that occurred before the statute of limitations when calculating the loss from her scheme.  Cobb raises both arguments for the first time in this appeal.

## I.

Cobb was a Controller at South Exchange, Inc., who performed electronic funds transfer transactions (EFTs) to disburse money from the company's checking account to other vendors.  Cobb made several EFTs from South Exchange's account that eventually credited to her personal account, concealing the fraudulent EFTs by including them with legitimate EFTs and labeling them as payments for bona fide expenses.  Her embezzlement scheme operated from May 2006 to May 2012, and she admitted to embezzling "approximately $978,537.53."  However, the FBI calculated the total funds embezzled as $1,049,634.14.  The probation officer calculated a base offense level of seven, and Cobb received a 16-level enhancement under § 2B1.1(b)(1)(I), because the loss from her theft was between $1,000,000 and $2,500,000.  Cobb received a two-level enhancement for abusing a

position of private trust, and a three level reduction for her acceptance of responsibility and guilty plea, resulting in a total offense level of 22. Based on her criminal history category of I and the total offense level of 22, Cobb's guideline range was 41 to 51 months' imprisonment. Although Cobb made eight objections to the PSI, she made no objection to the FBI's loss determination.

At sentencing, the court denied Cobb's request for a variance, sentenced Cobb to 45 months' imprisonment, and ordered a restitution award of $1,024,634.14. After the court pronounced the sentence, Cobb did not object to the guidelines calculation.

## II.

We normally review the district court's application of the Sentencing Guidelines de novo, and the court's calculation of losses for clear error. *United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009). However, when a sentencing issue is not raised before the district court, we review it for plain error. *United States v. Jones*, 743 F.3d 826, 828 (11th Cir. 2014). The appellant must show error that is plain and that affects substantial rights before we will exercise our discretion to address an error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 829 (internal quotation marks omitted).

3

The Guidelines provide a specific offense characteristic enhancement for wire fraud that increases the offense level depending on the financial loss suffered by victims or the intended loss from the crime. U.S.S.G. § 2B1.1(b)(1).  In preparing the PSI, the government must produce only a "reasonable estimate" of the loss, not a precise loss determination. *United States v. Renick*, 273 F.3d 1009, 1025 (11th Cir. 2001) (per curiam).  This estimate may be based on trial evidence, undisputed statements in the PSI, or evidence presented during the sentencing hearing. *United States v. Hamaker*, 455 F.3d 1316, 1338 (11th Cir. 2006).  Undisputed statements in the PSI are treated as admissions during sentencing. *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010).

The Guidelines also require the district court to consider all relevant conduct when determining the loss enhancement, and we broadly interpret the relevant conduct guideline y. *United States v. Behr*, 93 F.3d 764, 765 (11th Cir. 1996) (per curiam).  We expressly permit district courts to consider criminal conduct that occurred outside the statute of limitations when calculating the loss amount, pursuant to U.S.S.G. § 1B1.3(a). *Id.* at 765–66.

### III.

Cobb argues that the district court plainly erred by basing her guidelines calculation on losses over $1,000,000, when the factual proffer only supported a loss amount of $978,537.53.  Cobb argues that it was plain error to provide no

4

evidence supporting the higher loss amount, and this error is harmful since her sentence is outside the guidelines range under the correct total offense level.[1]  The government maintains that Cobb did not object to the loss amount in either her written objections or at sentencing.

The district court did not commit plain error by basing its offense enhancement on the loss figure provided in the PSI.  Undisputed statements in the PSI are proper evidence for a factual finding.  *United States v. White*, 663 F.3d 1207, 1216 (11th Cir. 2011); *Hamaker*, 455 F.3d at 1338.  Therefore, the district court was permitted to treat the loss determination in the PSI as fact when Cobb made no objection to it before or at sentencing.  While Cobb argues that the government bears the burden of providing "reliable and specific evidence" supporting its loss calculation, that burden is only placed on the government when the defendant challenges the PSI's accuracy.  *White*, 663 F.3d at 1216.  As no challenge was made to the loss determination, the court did not err in relying on it when calculating the loss.

Second, Cobb argues that the district court plainly erred by including losses from fraudulent transfers outside the five-year statute of limitations in the loss calculation.  Although Cobb admits that our precedent permits consideration of

---

[1] Cobb explains that had the PSI indicated the $978,537.53 loss amount specified in the stipulated factual proffer used at the plea colloquy, the total offense level would have been 20, resulting in a recommended sentencing range of 33 to 41 months, which would have been the appropriate range.

crimes outside the statute of limitations when calculating the loss amount from wire fraud, she argues that *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), precludes consideration of stale crimes as relevant conduct because it indicated that the Guidelines are punitive provisions separate from traditional sentencing discretion. In response, the government argues that the district court properly considered losses from the entire scheme as relevant conduct when calculating the loss amount. Further, the Guidelines do not establish punishment for stale crimes since they are advisory.

As Cobb raises the issue for the first time on appeal, she must show a plain error that affects substantial rights and seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Jones*, 743 F.3d at 828–29. The Guidelines require the court to consider all relevant conduct when calculating a base offense level, specific offense characteristics, or adjustments to the guidelines range. U.S.S.G. § 1B1.3(a). If the conviction was committed within a larger scheme, the court must consider all harm that resulted from "acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2), (3). Following *Booker,* though district courts now consider the Guidelines only in an advisory fashion, they are instructed to consider not merely the charged conduct but all "relevant conduct," in calculating a defendant's offense level. *Hamaker*, 455 F.3d at 1336. Thus, the

6

district court was permitted to consider losses from conduct outside the statute of limitations when calculating the loss enhancement under U.S.S.G. § 2B1.1(b). *Behr*, 93 F.3d at 765–66.[2]  Also, Cobb's citation to *United States v. Williams* is unpersuasive.  527 F.3d 1235, 1243 (11th Cir. 2008) (holding that where a scheme to defraud involves multiple wire transmissions, each transmission *may* form the basis of a separate count.)  *Williams* does not stand for the proposition that wire transfers outside the limitations period are not part of an ongoing scheme.  *Id.* Therefore, the court committed no error by considering Cobb's fraudulent conduct prior to May 2008 when calculating the loss enhancement.

Based upon the foregoing, the district court did not commit error by basing its loss estimate on the undisputed information in the PSI, *Hamaker*, 455 F.3d at 1338, or by considering criminal conduct outside the relevant statute of limitations when determining the loss from Cobb's embezzlement.  *Behr*, 93 F.3d at 765-66.

Accordingly, we affirm.

**AFFIRMED.**

---

[2] Although Cobb cites *Booker*, that case did not overrule *Behr*, as it made no holding about how the advisory guidelines should be applied.  Under the prior precedent rule, we must follow prior binding precedent "unless and until it is overruled by this court en banc or by the Supreme Court."  *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (per curiam) (internal quotation marks omitted).